977 F.2d 572
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
G-C PARTNERSHIP, Plaintiff-Appellee,
v.
David GLASER; Steven Glaser; Jack Glaser; Edward Lapidus;
Paul Lapidus; Andre Hercz; Spire North Carolina
Associates, Incorporated, C/O Spire
Companies, Defendants-Appellants.
 No. 92-1077.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 8, 1992
Decided: September 25, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson E. Legg, District Judge. (CA-90-3031-L)
 ARGUED: Weston Alan Park, PREM & DUMLER, Baltimore, Maryland, for Appellants.
 William Walsh Cahill, Jr., Weinberg & Green, Baltimore, Maryland, for Appellee.
 ON BRIEF: Mary T. Keating, Weinberg & Green, Baltimore, Maryland, for Appellee.
 D.Md.
 Affirmed.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Appellee G-C Partnership ("G-C") sued appellants for recovery of money due upon a guaranty agreement under which the appellants were joint guarantors. Appellants (the "Guarantors") contend that GC's attempted assignment of its interests under the guaranty, which violated the terms of an agreement between G-C and the Guarantors, relieved the Guarantors of their obligations under the guaranty agreement. The Guarantors appeal the district court's order rejecting this argument and entering partial summary judgment in favor of G-C. We affirm.
 
 I.
 
 2
 G-C is a Maryland general partnership originally formed with two general partners, Homer Gudelsky and Ronald Creamer. On June 29, 1989, the Guarantors and other individuals formed the High Point Design Associates Limited Partnership ("High Point"), a Connecticut limited partnership, for the purpose of acquiring real property located in North Carolina. On January 9, 1989, the partners of High Point agreed to sell to G-C, for $5,000,000, 50.51% of the limited partnership interests in High Point. In connection with this transaction the parties executed several documents, including: (a) the High Point Design Associates Limited Partnership Second Amendment of Limited Partnership Agreement (the "Amended Partnership Agreement"), and (b) a Guaranty Agreement (the "Guaranty").
 
 
 3
 The Amended Partnership Agreement provided that G-C would receive a minimum 12% per annum return on its investment, payable in monthly installments of $50,000. In the Guaranty, several of the partners of High Point, "[i]n order to induce G-C to acquire such limited partnership interest in High Point," (Guaranty, preamble, J.A. at 67) jointly and severally guaranteed to pay G-C an amount equal to any deficiency between the payments actually received by G-C from High Point and the payments provided for by the Amended Partnership Agreement. From January 1989 to March 1990, High Point made monthly payments to G-C totalling $636,667. Thereafter, neither High Point nor the Guarantors made any payments to G-C.
 
 
 4
 In July 1989, Homer Gudelsky died, thereby dissolving G-C. On May 11, 1990, "pursuant to the plan of dissolution and liquidation of G-C Partnership," (J.A. at 98) G-C transferred and assigned its right, title and interest in various partnerships, including High Point, to Martha B. Gudelsky, Homer Gudelsky's widow. However, G-C's attempt to assign to Mrs. Gudelsky its High Point interest violated the Amended Partnership Agreement, which provided:
 
 
 5
 No Limited Partner shall make or effect any Assignment of all or any part of his Partnership Interest except with the express written consent of the General Partner, which consent the General Partner may withhold in its sole discretion. Any such attempted Assignments without such consent shall be void.
 
 
 6
 J.A. at 49. Spire North Carolina Associates, Inc., general partner of High Point (and one of the Guarantors) never consented to G-C's assignment of its High Point partnership interest to Mrs. Gudelsky.
 
 
 7
 G-C filed the complaint in the present action on November 20, 1990, demanding payment of funds due under the Guaranty. On April 22, 1991, G-C moved for partial summary judgment for funds due as of that date. The Guarantors' opposition to that motion did not dispute any material facts, but claimed that G-C's actions, in violation of the Amended Partnership Agreement, relieved the Guarantors of their obligations under the Guaranty. On December 11, 1991, the district court granted the motion for partial summary judgment and entered judgment in favor of G-C for $1,078,975.00, representing the amount due as of the date of the hearing on the summary judgment motion, plus $15,000 in attorneys' fees as authorized in the Guaranty, plus $642.00 for costs of service. The Guarantors appealed.
 
 II.
 
 8
 Neither party disputes the district court's finding that under Maryland law, which governs G-C, Homer Gudelsky's death triggered the dissolution of G-C, and caused G-C to enter the winding up period outlined by the Maryland law on partnerships. See Md. Corps. & Ass'ns Code Ann. §§ 9-601-9-602. Similarly, neither party disputes the district court's finding that G-C's purported assignment to Mrs. Gudelsky of its interest in High Point was in direct violation of the Amended Partnership Agreement and, accordingly, void under the terms of that document.
 
 
 9
 The Guarantors' position appears to be that G-C's attempted assignment to Mrs. Gudelsky, though void under the terms of the Amended Partnership Agreement, terminated the existence of G-C. According to the Guarantor's brief, "At the point of the occurrence of the ... assignments to Mrs. Gudelsky, G-C Partnership had ceased to exist and ... can be deemed to have concluded 'winding up' as required by the Uniform Partnership Act." Appellant's Br. at 9. The Guarantors argue that, because Mrs. Gudelsky is barred from obtaining a direct partnership interest in High Point by the non-assignment clause of the Amended Partnership Agreement, and G-C is, under their theory, no longer in existence, there is no party eligible to receive distribution payments from High Point. As a result, the Guarantors contend that they are relieved of their obligations under the Guaranty.
 
 
 10
 The Guarantors' position is entirely without merit. Even if G-C's purported assignment to Mrs. Gudelsky can be viewed as an attempt to terminate the existence of G-C and end the "winding up" period, the assignment was void. As the district court found, "under the agreement the assignment is treated as having never occurred." J.A. at 158. Not surprisingly, the Guarantors cite no authority for their argument that a void transaction can produce such monumental consequences for the existence of a partnership. Furthermore, the Guarantors have no credible theory to explain what has happened, if their argument is correct, to the partnership interest formerly held by G-C. Their only explanation, advanced in a Memorandum in Opposition to Summary Judgment before the district court, was that the partnership interest was in "limbo" (a term that does not appear in Black's Law Dictionary ), with the convenient consequence, of course, that distributions based on this interest need not be paid. J.A. at 95.
 
 
 11
 Contrary to the Guarantors' contentions, a partnership remains in its "winding up" phase "until the winding up of partnership affairs is completed." Md. Corps. & Ass'ns Code Ann. § 9-601; Laddon v. Whittlesay, 408 A.2d 93, 95 (Md. Ct. Spec. App. 1979). Although there appears to be no specific holding by the Maryland courts on this issue, it is clear that the term "partnership affairs" as included in section 9-601 must include the receipt of funds owed to the partnership. The Guarantors have advanced no reason why the term"partnership affairs" should not include receipt of such funds, and any other interpretation would inevitably result, as it would here, in an undeserved windfall to debtors of the partnership. In this case, the outstanding obligation of High Point to make periodic payments to G-C indicates that the "partnership affairs" of G-C have not been completed and therefore the existence of G-C has not terminated. As discussed above, the attempted assignment to Mrs. Gudelsky of G-C's interest in High Point had no effect on G-C's status. As a result, the Guarantors are still liable under the Guaranty, and the district court was correct to enter summary judgment against them for their failure to make payments in accordance with the Guaranty.
 
 
 12
 The decision of the district court is hereby
 
 
 13
 AFFIRMED.